789 P.2d 519

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Robert Lee CUNNINGHAM,
Defendant–Appellant.**

No. 17589.

Supreme Court of Idaho.

Aug. 17, 1989.

## ORDER DENYING PETITION FOR REVIEW

The Appellant having filed a PETITION FOR REVIEW on June 7, 1989, and a supporting BRIEF on June 23, 1989, from a Court of Appeals Opinion released May 19, 1989, 116 Idaho 179, 774 P.2d 349; therefore, after due consideration,

IT IS HEREBY ORDERED that Appellant's PETITION FOR REVIEW be, and hereby is, DENIED and the dissent on Denial of the Petition for Review by Bistline, J., be, and hereby is, RELEASED.

## ON DENIAL OF PETITION FOR REVIEW.

BISTLINE, Justice, dissenting.

### PART I

The Court of Appeals observed that, "Of course we reach our own determinations of law upon the facts presented. The facts are undisputed." It does not appear to me that the "facts" can be said to be all that undisputed. The Court of Appeals provides its reader with two findings which are noted as *important:*

(1) It is clear that the defendant requested a blood concentration test *rather than* a breath test.

(2) The officer responded by telling the defendant that he had to take the breath test *instead.*

Frankly, I fail to grasp the significance of those two statements. Had the defendant stated that he wanted a blood concentration test *instead* of a breath test, the same meaning would have been conveyed to the officer. It is clear that the officer planned to administer a breath test to the defendant, and in fact did so. What is also evident from the Court of Appeals' opinion is that the officer failed to comply with the provisions of I.C. § 18–8002(3) which are:

(3) At the time an evidentiary test for concentration of alcohol, drugs or other intoxicating substances is requested, the person shall be informed that if he refuses to take the test:

(a) His license will be seized by the officer and a temporary permit will be issued; provided, however, that no peace officer shall issue a temporary permit pursuant to this section to a driver whose license or permit has already been and is suspended or revoked because of previous violations;

(b) He has the right to request a hearing within seven (7) days to show cause why he refused to take the test;

(c) If he does not request a hearing or does not prevail at the hearing, his license will be suspended absolutely for one hundred eighty (180) days; and

(d) *After submitting to the test he may, when practicable, at his own expense, have additional tests made by a person of his own choosing.*

(4) If the motorist refuses to take the evidentiary test after the information has been given in accordance with subsection (3) above:

(a) His license will be seized by the police officer. . . .

Under those provisions, it is clear that the defendant could refuse to take the breath test, and in that event he would have precluded himself from having additional tests made by a person of his own choosing. Inferentially, the officer having him in cus-

tody would be obliged, provided the defendant submitted to the breath test, to arrange for the defendant to be taken for such additional testing—in this case apparently the unnamed local medical center which the pair passed by on their way to the jail facility.

It is difficult to distinguish a detained defendant's invocation of his right to have an independent sobriety test when such is offered to him under I.C. § 18–8002(3) from his right to counsel and his right to remain silent via *Miranda* and I.C. § 19–853. While it is true that an accused can waive the *Miranda* and statutory rights after the same have been invoked, it is equally clear under case law and I.C. § 19–857, that the waiver must have taken place only where the accused has acted with full awareness of his rights and the consequences of a waiver and if the waiver is otherwise made according to law. *State v. Monroe*, 103 Idaho 129, 130, 645 P.2d 363, 364 (1982); *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). *See also* opinion of the Hon. James G. Towles, District Judge, First Judicial District, State of Idaho, found as appendix to *State v. Lamere*, 103 Idaho 839, 873–75, 655 P.2d 46, 80–82 (1982).

The Court of Appeals appears to have persuaded itself that the defendant's request was for an *alternative* test as distinguished from an additional test, and on that basis alone reaches the conclusion and holding that the magistrate erred in concluding that the arresting officer had denied the defendant the additional test to which the statute clearly provides that defendant was entitled. In footnote 1 to its opinion it recognized that a request for an additional test can be a "continuing request to be honored after the officer's test is completed." With that statement no one should disagree. But then the court opines that "the record in this case does not support a conclusion that Cunningham's (defendant's) request was a continuing one." This *ratio decedendi* is in essence a genuinely classic *ipse dixit*. The shortcoming of the supporting record is not divulged. One judge alone heard the testimony of the witnesses, listened to any nuances, saw any facial expressions, and in short passed on the credibility of the witnesses, drawing inferences from their demeanor and spoken word.[1] That one judge made the factual determination that the defendant wanted from the outset of his encounter to have a blood test, whether it be alternative or additional, being of no moment. That one judge made the determination that the request was not honored. Who later becomes better positioned? Likewise it is of no moment, whether the request for a blood test was instead of, rather than, or in addition to the breath test. One would presume that the officer informed the defendant as the statute requires, and that he informed in terms of "an additional test." The district court, sitting in an appellate capacity, apparently was first to succumb to the State's semantical argument that the defendant's request for a blood sample testing was "alternative," rather than (instead of) "additional." Officer Greensides' testimony made it abundantly clear that he was going to provide only a breath test, and that moreover there was going to be a breath test. He had the defendant in his complete control—presumably handcuffed, in the patrol car and headed to the jail facility. There was a breath testing; the defendant submitted to it. Any other testing done on defendant that night would have been a second testing, and would have been the additional testing for which the statute pro-

1. Definitely involved in the trial court's determination was the state of mind of the arresting officer who took defendant into custody. The defendant told the officer that he wanted a blood sample test. The officer's testimony, even on a cold record, is certainly testy, to say the least, and better described as hostile and unbending. For instance, when asked, "Was there any reason why you didn't take him for a blood test?," the officer's answer was, "Because we *offer* a blood test." The officer conceded knowing that the defendant was entitled to a blood test upon request, but made *his* own interpretation of the request to mean, "Instead of a breath test, yes." Tr., p. 4.

vides. It would hardly do justice to Sam Ervins' "mother-tongue English" to denominate the second testing as alternative when in actuality it would be additional to the first. The first test was conducted by the State. The additional test would have been independently purchased by the defendant. But, as the trial judge correctly reasoned, the jailed defendant either had to be delivered, or, no test.

Generally the principle which an appellate court follows most closely is to let the trial judge make such factual determinations. Here, it is abundantly clear that the request for a blood test was made, and it was not withdrawn, nor was it in any way waived. Waiver is not discussed. Just as with an invocation of the right to remain silent, and the right to counsel claimed, until there is a proven waiver of such requests, it would at the least require a judicial finding that the request was withdrawn in some manner.

Instead of, or rather than, favoring its readers with any factual basis for the finding that the request was not continuing, the court provides us with the sheer surmise that "for all we know, the breath test result may have caused Cunningham to change his mind concerning a blood-sample test."

That same rationale would be equally applicable to a custodial interrogation of an uncounseled defendant who had asserted his right to counsel and to remain silent. However, *State v. Monroe,* 103 Idaho 129, 645 P.2d 363, says otherwise.

The trial judge in this case wrote a considered decision which gave proper recognition to the statutory provisions, and saw implicit therein that the right to have an independent test required that the custodial officer deliver the defendant for testing. See Appendix A, attached.

## PART II

It is much regretted that I find myself entirely alone in examining the petition for review, and in causing the appeal record to be delivered across town from the Court of Appeals building to this.

I also regret to inform counsel that due to circumstances beyond his control, and over my protest, his petition for review has been presented to and acted upon by less than a full Court. As I have said on other occasions, it is not easy to gain three votes (the requisite number for the granting of review) out of five members of the Court, and considerably less is the chance of doing so where the number of available votes is only four, or worse yet, three.

## APPENDIX A

In The District Court of The First Judicial District of The State of Idaho, In And For The County of Kootenai

Magistrate Division
STATE OF IDAHO, Plaintiff,

vs.

ROBERT LEE CUNNINGHAM,
Defendant.
MEMORANDUM OPINION

Case No. M 50958

Filed September 9, 1987.

Jeff Jones, Pros. Atty., Coeur d'Alene for the Plaintiff.

Dan J. Rude, Coeur d'Alene, lawyer for the Defendant.

The Defendant was arrested for a violation of Driving under the Influence by Officer Greensides of the Coeur d'Alene Police Department during the early morning hours of June 18, 1987. After conducting field sobriety tests at the scene the Defendant was transported to the Kootenai County Public Safety Facility to administer a breath test for alcohol concentration on the Intoximeter 3000. During transport the patrol vehicle passed by Kootenai Memorial Hospi-

tal where-upon Defendant began to insist upon a blood test rather than a breath test.

Officer Greensides testified at a hearing on Defendant's Motion to Suppress that it was department policy to administer a breath test subsequent to DUI arrests rather than a blood or urine test. He also advised the Defendant that a breath test and not a blood test would be administered. At the jail the Defendant was read the advisory form pursuant to I.C. § 18–8002 and did submit to the Intoximeter 3000 which yielded a B.A.C. Of .16.

The Defendant made no further request for a blood test after arriving at the jail. He did testify that he had $96.00 in cash on his person which was sufficient to pay for the test. Officer Greensides further acknowledged that blood tests are administered at the hospital to suspected DUI drivers when the intoximeter is broken or an accident necessitates hospitalization.

After hearing on Defendant's motion September 2, 1987 the Court took the Motion to Suppress under advisement to consider the proper application of I.C. § 18–8002 and *State vs. Exner*, Kootenai County case #40589. At issue are the provisions of I.C. § 18–8002 which reads in pertinent part as follows:

(3)(d) After submitting to the test he may, when practicable, at his own expense, have additional tests made by a person of his own choosing.

(5)(d) .... The failure or inability to obtain an additional test or tests by a person shall not preclude the admission of an evidentiary test for alcohol concentration taken at the direction of the police officer *unless the additional test was denied by the police officer*.

It is well established that due process does not require that a police officer administer a blood alcohol concentration examination to all drivers charged with driving under the influence. *State vs. Hayes*, 108 Idaho 556, 700 P.2d 959 (1985). When such a request is made by a suspected driver the duty to administer a test arises only within the context of I.C. § 18–8002. In other-words only after submitting to a test requested by the police officer can the affirmative duty arise.

It is clear that the Defendant requested a blood concentration test rather than a breath test. It is also clear that such a test was accessible. The testimony inferred that the hospital facilities were close by and that Officer Greensides had utilized the hospital testing of blood previously. All factors cleary indicated that administration of the blood test after the breath test was practicable.

The Defendant wanted a test of his own choosing and made that desire known to the officer. The officer responded by telling the Defendant that he had to take the breath test instead. Then by virtue of reading the Defendant the advisory form pursuant to I.C. § 18–8002 he was told he would get an opportunity to have the blood test provided it was practicable and he consented to the Intoximeter 3000. Absent a showing of impracticality the Defendant is entitled to his requested test at this juncture.

After full consideration of this matter the Court is of the opinion that the Defendant was denied an opportunity to have an additional test performed. Therefore Defendant's Motion to Suppress shall be granted.

/s/ John Patrick Luster
John Patrick Luster
Magistrate