# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 41210

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2014 Unpublished Opinion No. 705 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: August 29, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| AMY JO VANTASSEL, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge. Hon. Thomas P. Watkins, Magistrate.

Intermediate appellate decision of the district court affirming the magistrate court's order of license suspension, affirmed.

Gabriel J. McCarthy, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello argued.

_____

GRATTON, Judge

Amy Jo VanTassel appeals from the district court's intermediate appellate decision affirming the magistrate's order suspending her driver's license pursuant to Idaho's implied consent statute, Idaho Code § 18-8002. She asserts the finding that she refused to submit to the evidentiary testing is not supported by substantial and competent evidence.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Officer Erickson with the Meridian Police Department was dispatched in an attempt to locate a possible drunk driver. The officer located and observed the suspect's vehicle swerving. Officer Erickson stopped VanTassel and, upon making contact, observed an odor of an alcoholic beverage coming from her. He then conducted field sobriety tests and VanTassel failed the horizontal gaze nystagmus and the walk-and-turn tests and scored no points on the one-leg stand test. VanTassel was subsequently arrested for misdemeanor DUI and the officer provided her

1

the opportunity to take a breathalyzer test while seated in the back of his patrol car. Initially she refused, but changed her mind and agreed to perform the test. She provided insufficient breath samples on three separate attempts. After the third attempt, Officer Erickson considered her conduct a refusal to take the breath test; he seized her license and submitted an affidavit of refusal to the magistrate court.

VanTassel filed a request for a refusal hearing five days later on whether she refused the test. At the hearing, she testified that she attempted to blow three times and was confused that her failed efforts were considered a refusal. Officer Erickson testified that VanTassel took one short breath and stopped blowing, took intermittent breaths, and also pulled her head away from the breath tube during the tests. He also stated there was no indication that she had physical limitations that would prohibit her from taking the test.

An audio recording of the three attempts to get a sufficient reading was also admitted. Officer Erickson can be heard telling VanTassel to take a deep breath and blow until he tells her to stop. Thereafter, he instructs her that she needs to blow harder and keep her lips on the breath tube. There is a two-minute wait for the machine to reset after this first failed attempt. On the second attempt, the officer can be heard again instructing her not to stop blowing until he tells her to stop. He then says she pulled away from the machine. After this second insufficient reading, Officer Erickson informs VanTassel that if she continues to "mess with" the instrument during her third attempt, it will be considered a refusal. During the third attempt, the officer can be heard telling her to keep going and shortly after, he and the other officer at the scene can be heard telling her they both saw her stop blowing and that she was giving intermittent breaths. VanTassel then replied that she was blowing.

The magistrate issued a decision suspending VanTassel's license, but stayed the suspension during an appeal. The magistrate held that she failed to carry her burden of establishing that her license should be reinstated. On intermediate appeal, the district court affirmed the magistrate's decision suspending her license. VanTassel timely appeals to this Court.

## II.

## ANALYSIS

When reviewing the decision of a district court sitting in its appellate capacity, our standard of review is the same as expressed by the Idaho Supreme Court:

The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). Thus, the appellate courts do not review the decision of the magistrate court. *Bailey*, 153 Idaho at 529, 284 P.3d 973. Rather, we are procedurally bound to affirm or reverse the decisions of the district court. *State v. Korn*, 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n.1 (2009).

Idaho Code § 18-8002 governs the rights and penalties implicit in a decision to refuse to submit to evidentiary testing. It provides, in part, that if a motorist "refuses" to take an alcohol-concentration test after he or she has been arrested for driving under the influence, the operator's license shall be suspended. I.C. § 18-8002(4). The concept of refusal, as embodied in I.C. § 18-8002, has factual and legal dimensions. *In re Smith*, 115 Idaho 808, 809, 770 P.2d 817, 818 (Ct. App. 1989). When a question of refusal turns upon a determination of the motorist's words or expressive acts, the issue is one of fact. *Id.* However, when the question turns not upon whether certain things were said or done, but upon whether such words or acts are of legal significance, then the issue is one of law. *Id.* Thus, the courts have ruled, as a matter of law, that if a motorist simply feigns consent and fails to take an alcohol-concentration test, such behavior is deemed to be a refusal. *Id.* (citing *State v. Clark*, 425 N.W.2d 347 (Neb. 1988)). Similarly, if a motorist engages in delaying tactics to avoid deciding whether to refuse or to take the test, such acts are deemed to constitute a refusal. *Smith*, 115 Idaho at 809, 770 P.2d at 818 (citing *Marmo v. Commonwealth Department of Transportation*, 543 A.2d 236 (1988)). Over questions of law, we exercise free review. *State v. O'Neill*, 118 Idaho 244, 245, 796 P.2d 121, 122 (1990).

VanTassel relies on *In re Griffiths*, 113 Idaho 364, 744 P.2d 92 (1987), and *Helfrich v. State*, 131 Idaho 349, 955 P.2d 1128 (Ct. App. 1998), to support her argument that the lower court's decision should be reversed. In both cases, the driver was appealing the suspension of his or her driver's license pursuant to I.C. § 18-8002, and the cases were remanded.

The driver in *Helfrich* had her license suspended for failure to submit to evidentiary testing. *Helfrich*, 131 Idaho at 350, 955 P.2d at 1129. At the time of her testing, the officer told

3

her that she was taking the test incorrectly and needed to blow air through the tube for a longer period of time. She informed the officer that she was blowing all the air she could blow. *Id.* at 349, 955 P.2d at 1128. After several deficient readings, the officer concluded that Helfrich did not want to complete the test and her failed efforts constituted a refusal. *Id.* at 350, 955 P.2d at 1129. At her refusal hearing, the officer testified that the driver would either briefly spurt air into the tube or would not blow long enough to complete the test. *Id.* at 349, 955 P.2d at 1128. Helfrich testified that she suffered from bronchitis at the time of her arrest and therefore could not successfully complete the breathalyzer test. *Id.* at 350, 955 P.2d at 1129.

On her appeal from the order suspending her license, this Court held the officer's decision to treat her actions as a refusal may not be upheld if she proves that she suffered from a physical impediment which prevented her from successfully completing the breath test. *Id.* at 352, 955 P.2d at 1131. This Court reasoned that a driver may be physically unable to complete the breath test because he or she suffers from an illness, and even though in that case Helfrich did not specifically state that she had bronchitis, she had sufficiently articulated a physical inability to complete the task so as to put the officer on notice that a different test should be utilized when she told the officer that she was doing the best she could and blowing all the air she had. *Id.* at 351-52, 955 P.2d at 1130-31. The Court noted that a driver may suffer from an illness that prevents them from completing the test that is still undiagnosed, and "[i]n such circumstances, the suspect could hardly be required to inform the officer of the name of the physical condition that was unknown at the time." *Id.*

In *Griffiths*, the driver refused to submit to evidentiary testing after being arrested for driving under the influence. *Griffiths*, 113 Idaho at 366, 744 P.2d at 94. The breathalyzer was inoperative and he was asked to submit to a blood draw, which he refused. *Id.* Thereafter, his driver's license was suspended. At his refusal hearing, he testified that he refused the test because of his fear of needles. *Id.* at 367, 744 P.2d at 95. The magistrate held that the driver failed to show cause for refusing the test, although it did not issue findings of fact as to whether the driver did in fact have a fear of needles or whether he communicated this fear to the officer. *Id.* On appeal, the Idaho Supreme Court remanded the case back to the magistrate to make these factual determinations. *Id.* at 372, 744 P.2d at 100. It held that a fear of needles may establish sufficient cause for refusing to submit to a requested blood test pursuant to I.C. § 18-8002 "if the fear is of such a magnitude that as a practical matter the defendant is psychologically unable to

4

submit to the test, *and* if the fear is sufficiently articulated to the police officer at the time of refusal so that the officer is given an opportunity to request a different test." *Griffiths*, 113 Idaho at 372, 744 P.2d at 100. Further, the Court stated, "Clearly, *a demonstrated physical inability to perform the requested test would be sufficient cause.*" *Id.* (emphasis added).

VanTassel likens her situation to that of *Helfrich* in that she did communicate that she was having difficulty completing the test; however, unlike the driver in *Helfrich*, VanTassel has not proven or even asserted that she suffered from a physical impediment which prevented her from successfully completing the breath test. VanTassel cites *Griffiths*' holding that even though the choice as to which evidentiary test will be requested rests with the officer, "a psychological inability to perform the requested test may, *if supported by the evidence*, establish sufficient cause for refusing the test." *Griffiths*, 113 Idaho at 372, 744 P.2d at 100. However, unlike the driver in that case, she does not argue there is evidence to support a psychological inability to perform the test, other than her assertions at the refusal hearing that she was intimidated, that she was unable to complete the test due to the stressful circumstances of the DUI investigation that were distracting and confusing to her, and that the test was more difficult for her than the average person. VanTassel's assertions fall short of the physical and psychological inabilities recognized in *Helfrich* and *Griffiths*.

The magistrate heard the audio recording and VanTassel's testimony concerning whether she was unable to perform the breathalyzer test due to physical or psychological reasons. Upon consideration of the evidence and testimony, the magistrate found that, "[s]he gave no logical reason to the officers as to why she couldn't complete the test, other than to say that she was blowing as instructed. The audio recording does not bear this out." It concluded that VanTassel was given adequate instructions on how to complete the breath test, failed to comply, and that her conduct in doing so constituted a refusal. While VanTassel maintains that she did follow the officer's instructions, as the district court noted, the magistrate did not find her credible when she testified that she "did what they asked me to do." This Court will not substitute its view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *State v. Flowers*, 131 Idaho 205, 207, 953 P.2d 645, 647 (Ct. App. 1998). Moreover, contrary to VanTassel's contention, the

5

magistrate did not fail to take into consideration her explanations as to her circumstances, state of mind, and her impediments to complying with the instructions.[1]

Finally, VanTassel asserts that she should have been offered a different evidentiary test after the insufficient readings. This Court has held that if a driver cannot perform a test, the officer may request a different test. *State v. Wagner*, 149 Idaho 268, 271, 233 P.3d 199, 202 (Ct. App. 2010). However, the officer is not required to do so. If the driver cannot perform the requested test, the officer may either: (1) request a different test; or (2) treat the failure to take the test as a refusal and submit the issue of whether the driver was actually unable to perform the test for decision at the hearing. *Id*. The officer in this case chose the second option, and therefore, left the decision as to whether she was unable to perform the test to the magistrate at the refusal hearing.

## III.

## CONCLUSION

There is substantial and competent evidence to support the lower court's finding that VanTassel refused to submit to the evidentiary testing. Therefore, the intermediate appellate decision of the district court, affirming the license suspension order by the magistrate court, is affirmed.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**

---

[1] VanTassel argued that the magistrate improperly ignored her "subjective belief," suggesting that the magistrate's reference to "whatever" her subjective belief may have been related to her explanation of her circumstances, confusion, and state of mind. However, the magistrate's reference to her "subjective belief," related to her contention that she was trying because she was under the impression that if she did not complete the test a blood sample would be taken from her. The magistrate appropriately considered the evidence and the legal standards.